**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| GODO KAISHA IP BRIDGE 1 <br><br> Plaintiff, <br><br> v. <br><br> SEAGATE TECHNOLOGY LLC, SEAGATE TECHNOLOGY (THAILAND) LIMITED, SEAGATE SINGAPORE INTERNATIONAL HEADQUARTERS PTE. LTD., and SEAGATE TECHNOLOGY (NETHERLANDS) B.V., <br><br> Defendants. | Civil Action No. 24-cv-3691 LMP/DTS |

**SEAGATE'S OPPOSITION TO PLAINTIFF'S MOTION TO EXTEND THE**
<u>**DEADLINE TO FILE A DISCOVERY MOTION**</u>

**TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................... 1

II.    FACTUAL BACKGROUND ...................................................................... 3

    A.    The Court's Scheduling Order and IP Bridge's Longtime Awareness of the Deadline to File Non-Dispositive Motions ........................................ 3

    B.    IP Bridge's Privilege Log Deficiencies and the Parties' Agreed-Upon Extension for Seagate to File a Motion ................................................ 4

    C.    IP Bridge's Delay in Pursuing Discovery from Seagate and its Request for an Extension ................................................................................... 5

    D.    IP Bridge's Delay in Reviewing Seagate's June 11 Discovery Responses and the June 22 Meet-and-Confer ............................................... 7

III.    LEGAL STANDARDS ............................................................................... 8

IV.    ARGUMENT ............................................................................................... 9

    A.    IP Bridge Lacks Good Cause for the Requested Extension ......................... 9

        1.    The Two "Good Cause" Arguments That IP Bridge Advances Are Legally Irrelevant .......................................... 10

        2.    IP Bridge Was Not Diligent in Pursuing the Discovery at Issue ................................................................................ 11

        3.    IP Bridge Was Not Diligent in Raising Its Alleged Disputes ............................................................................. 12

    B.    IP Bridge's Requested Extension Would Prejudice Seagate ...................... 14

V.    CONCLUSION ......................................................................................... 16

## TABLE OF AUTHORITIES

**Cases**          **Page(s)**

*Archer Daniels Midland Co. v. Aon Risk Servs., Inc.*,
187 F.R.D. 578 (D. Minn. 1999) .................................................................. 8, 9, 13, 15

*Bombardier Recreational Prods. Inc. & BRP U.S. Inc. v. Arctic Cat Inc.*,
No. CV 12-2706 ADM/LIB, 2015 WL 8082522 (D. Minn. Dec. 7,
2015) ............................................................................................................... 14

*Bradford v. DANA Corp.*,
249 F.3d 807 (8th Cir. 2001) .......................................................................... 9, 15

*Damgaard v. Avera Health*,
No. CIV. 13-2192 RHK/JSM, 2015 WL 1608209 (D. Minn. Apr. 10,
2015) ............................................................................................................... 15

*Daramola v. Dungarvin Minnesota, LLC*,
No. 24-CV-00761, 2026 WL 1102712 (D. Minn. Apr. 23, 2026) .............................. 11

*Fair Isaac Corp. v. Fed. Ins. Co.*,
No. 16-CV-1054, 2022 WL 1537957 (D. Minn. May 16, 2022) .......................... 11, 12

*FLOE Int'l, Inc. v. Newmans' Mfg. Inc.*,
No. CIV. 04-5120, 2005 WL 6218040 (D. Minn. Nov. 9, 2005), *aff'd*,
2006 WL 6116643 (D. Minn. Feb. 3, 2006) ........................................................ 15, 16

*Sherman v. Winco Fireworks, Inc.*,
532 F.3d 709 (8th Cir. 2008) .......................................................................... 8, 9, 10

**Statutes, Rules & Regulations**

Fed. R. Civ. P. 16(b)(4) ......................................................................................... 8

Fed. R. Civ. P. 26(f) .............................................................................................. 3

Local Rule 16.3 ..................................................................................................... 8

## TABLE OF EXHIBITS

| No. | Description |
|---|---|
| Ex. A | Letter from K. Elfstrand dated June 5, 2026 |
| Ex. B | Letter from S. Duncan Smith dated May 15, 2026 (excerpts) |
| Ex. C | Email chain dated June 19, 2026 |
| Ex. D | Email chain dated June 24, 2026 |

All exhibits are attached to the Declaration of Doowon Chung ("Chung Decl."), filed herewith.

## I.    INTRODUCTION

IP Bridge has known about the timing for filing discovery motions regarding written and document fact discovery under the Scheduling Order (i.e., two weeks after the close of written and document fact discovery) for over a year and a half. Despite this, IP Bridge waited until May 12, 2026—*the last possible day in the schedule to serve discovery requests*—to serve three new sets of discovery requests on Seagate. Only now, after having received Seagate's responses on June 11, 2026, IP Bridge asks this Court for a three-week extension to file a discovery motion as to those June 11 responses to try and "narrow" the disputes before bringing them to the Court. But IP Bridge fails to identify any "good cause" sufficient to warrant that extension. IP Bridge's motion should be denied for three reasons.

*First*, despite holding the burden to show good cause, IP Bridge *never* explains why it could not have met the Scheduling Order's deadline to file a discovery motion had it exercised reasonable diligence—because it cannot. Instead, IP Bridge argues that it has good cause for an extension because it "diligently worked to *narrow*" its disputes. (Dkt. 195, "Mot.," at 4 (emphasis added).) But that is not the relevant question. IP Bridge's failure to address and explain why it could not have met the deadline is fatal and warrants denial of its motion.

*Second*, IP Bridge cannot show that it was diligent in pursuing this discovery from Seagate. Tellingly, IP Bridge never explains why it waited until the last possible day in the schedule to serve three new sets of discovery requests or why it could not have served them sooner. IP Bridge knew of the deadline to file discovery motions for over 18 months, yet

1

knowingly chose to wait until the last minute to serve these requests. That is not diligent. Put simply, IP Bridge's present need for an extension is a problem of its own making.

*Third*, even setting aside IP Bridge's lack of diligence in seeking the discovery at issue, IP Bridge also fails to explain why it could not have raised its disputes within the two weeks allotted under the Scheduling Order. The entire purpose of including a two-week buffer in the schedule to raise discovery motions is to ensure the parties have sufficient time to raise any late-arising disputes. But instead of diligently attempting to meet the June 25 deadline, IP Bridge delayed at every step—it ignored Seagate's June 12 offer to meet and confer and took over a week to identify the specific requests that it believed were deficient. There is no question that IP Bridge *could* have met the deadline had it wanted to; it simply chose to prioritize other issues, like the preparation of a 20-page deficiency letter and this motion.

Instead of providing a sufficient explanation on diligence, IP Bridge tries to make its request appear more reasonable by characterizing it as seeking a "reciprocal extension" commensurate with the agreed-upon extension for Seagate to file a motion as to IP Bridge's privilege log. This is an apples and oranges comparison. In contrast to IP Bridge, Seagate diligently pursued the deficiencies in IP Bridge's privilege log—that IP Bridge delayed for months in producing, contained approximately 12,000 entries, and that IP Bridge has itself admitted was not subject to a relevance review. As such, the parties agreed to an extension that *benefits IP Bridge* by giving it extra time to cure the widespread problems with its log. There is nothing "reciprocal" about IP Bridge's request for more time so it can "narrow" its disputes. And unlike Seagate's extension, IP Bridge's requested extension

would prejudice Seagate by diverting its attention away from work that is timely and more pressing.

In short, IP Bridge created its own time crunch through its own lack of diligence and now asks the Court to bail it out at the last minute. The Court should reject that attempt.

## II.   FACTUAL BACKGROUND

### A.   The Court's Scheduling Order and IP Bridge's Longtime Awareness of the Deadline to File Non-Dispositive Motions

On November 8, 2024, the Court issued an order requiring the parties to, *inter alia*, "prepare and file a joint Rule 26(f) Report" using the Court's Rule 26(f) template for patent cases. (Dkt. 81 at 1.) With respect to the deadline for filing non-dispositive motions, the Court made clear: "Absent unusual circumstances, this date should be ***no more than two weeks following the close of fact discovery***." (*Id.* at 7 (emphasis added).) On December 3, 2024, the parties submitted their Rule 26(f) report and included proposed dates for the non-dispositive motion deadline consistent with that two-week timing. (Dkt. 88 at 4 (fact discovery deadline), 7 (non-dispositive motion deadline).)

On January 17, 2025, the Court issued its Scheduling Order. (Dkt. 91.) Consistent with the template, the Scheduling Order required that all non-dispositive motions "be filed and served **no later than 14 days** after the close of fact discovery." (Dkt. 91 at 10 (emphasis in original).) The deadline to complete all written and document fact discovery was June 11, 2026. (Dkt. 164 at 1 (Amended Scheduling Order).) Accordingly, the deadline to file non-dispositive motions regarding written and document fact discovery was June 25, 2026. (Dkt. 91 at 10.)

**B.    IP Bridge's Privilege Log Deficiencies and the Parties' Agreed-Upon Extension for Seagate to File a Motion**

IP Bridge's repeated characterization of its request as a "reciprocal extension" is baseless. Below, Seagate explains the context for its extension to file a motion regarding IP Bridge's privilege log, including: (i) IP Bridge's extensive delay in providing its log, (ii) the significant deficiencies in that log, and (iii) the agreed-upon extension for Seagate to file a motion related to that log and IP Bridge's improper claims of privilege/work product protection. (Dkts. 187 (joint motion), 191 (order), 201 (joint motion), 203 (order).)

On January 12, 2026, IP Bridge proposed that the parties "indefinitely postpone the exchange of privilege logs" because "privilege logs are typically a waste of time." (Ex. A at 1.) Seagate rejected this proposal. (*Id.*) What followed was IP Bridge dragging its feet for months and repeatedly delaying to commit to an exchange date—declining April 22, declining May 1, then agreeing to May 8, only to postpone to May 15. (*Id.* at 1–2.)

On May 15, 2026—less than a month before the close of written and document fact discovery—IP Bridge finally served its privilege log. (Ex. B) In reviewing that log, the reason for IP Bridge's initial proposal to forego a privilege log altogether (and its ensuing delay) became clear: the log contained approximately 12,000 entries. (Chung Decl. ¶ 7.) Moreover, IP Bridge's privilege log suffered from significant deficiencies, including insufficient privilege descriptions, broad categories of improperly withheld documents, and the failure to log over 1,400 documents that IP Bridge withheld. (*See generally* Ex. A.) On June 5, 2026, Seagate sent a letter identifying those deficiencies and requested that IP Bridge cure them or schedule a meet-and-confer by June 10, 2026. (*Id.*) IP Bridge

4

responded to indicate that it was "looking into the purported issues" and needed more time. (Ex. C (Email from S. Duncan Smith dated June 10, 2026).)

The parties met and conferred on June 12, 2026, to discuss IP Bridge's privilege log. During that conference, IP Bridge admitted that it had not conducted a relevance review as part of its document collection and production and believed that its privilege log included many irrelevant documents. (Chung Decl. ¶ 8.) As a result of these issues, the parties agreed to extend Seagate's deadline to file a motion as to IP Bridge's privilege log to allow IP Bridge to investigate and cure these widespread, admitted deficiencies on its 12,000 entry privilege log. (*Id.* ¶¶ 8–9; Dkt. 187 (joint motion); Dkt. 191 (order granting joint motion).)

### C.    IP Bridge's Delay in Pursuing Discovery from Seagate and its Request for an Extension

While IP Bridge started serving discovery requests on Seagate as early as November 26, 2024, it waited until May 12, 2026—the last possible day to serve discovery requests under the schedule—to serve 8 interrogatories, 35 requests for admission, and 6 requests for production. (Chung Decl. ¶ 4.) Seagate served responses to those requests on June 11, 2026. (*Id.* ¶ 5.)

On June 12, only a few hours before the meet-and-confer on IP Bridge's privilege log noted above, IP Bridge emailed to (i) indicate a generic belief that Seagate's discovery responses were deficient, and (ii) asked Seagate to be prepared to discuss these responses during the meet-and-confer "this afternoon." (Dkt. 197 (Email from S. Duncan Smith dated June 12, 2026).) That email did not identify any specific responses that IP Bridge believed

5

to be deficient, let alone any specific deficiencies in those responses. (*Id.*) Seagate informed IP Bridge that there would not be time to discuss those still-unidentified issues during the meet-and-confer scheduled for IP Bridge's privilege log, but instead offered to meet on June 15 or 16, asking only that IP Bridge identify the specific requests at issue beforehand. (Dkt. 197 (Email from D. Chung dated June 12, 2026); Ex. D (Email from K. Elfstrand dated June 24, 2026).)

IP Bridge did not take Seagate up on that offer. (Chung Decl. ¶ 11.) Instead, IP Bridge asked Seagate to agree to an extension of its deadline to file discovery motions, framing it as "reciprocal" to the agreed-upon extension for Seagate's privilege log motion. (*Id.* ¶ 10.) But this would not be a "reciprocal" extension. The extension for Seagate's privilege log motion was sought solely to allow IP Bridge time to cure the admitted, widespread deficiencies in its 12,000 entry log which, if anything, was beneficial for IP Bridge. In fact, Seagate explained that, if there was not an extension for a motion on the privilege log, it would file its privilege log motion by the June 25, 2026 deadline in the Scheduling Order. (Ex. C (Email from D. Chung dated June 18, 2026); *id.* (Email from K. Elfstrand dated June 18, 2026).) In contrast, IP Bridge's present need for an extension *solely arises from its own lack of diligence*. Again, IP Bridge has known since late 2024—over a year and a half ago—that the deadline to file written and document fact discovery motions would fall two weeks after the close of such discovery (i.e., June 25, 2026). (Dkt. 81.) Yet it waited until May 12, 2026 to serve three sets of discovery on Seagate despite knowing that it would not receive responses until June 11 and would thus need to evaluate them on an expedited basis.

**D.    IP Bridge's Delay in Reviewing Seagate's June 11 Discovery Responses and the June 22 Meet-and-Confer**

Instead of agreeing to Seagate's June 12 proposal to meet-and-confer on June 15 or June 16, IP Bridge prioritized other issues. For example, on June 17, IP Bridge sought to claw back six documents it alleged were inadvertently produced work product, including two documents that Seagate had cited in its opposition to IP Bridge's motion for leave to amend its infringement contentions filed the day before. (Dkt. 197-1 (Email from S. Duncan Smith dated June 17, 2026); Dkt. 187 ¶ 4.)[1] But in doing so, IP Bridge admitted that it still needed to investigate "whether any other documents cited in Seagate's June 11 interrogatory responses are privileged." (Dkt. 197-1 (Email from S. Duncan Smith dated June 17, 2026).) Thus, even as of June 17, it was clear that IP Bridge had not adequately reviewed Seagate's June 11 discovery responses.

IP Bridge did not identify any alleged issues in Seagate's discovery responses with specificity until Friday, June 19—a full week after Seagate's offer to meet-and-confer— when it served a 20-page letter identifying 42 purported issues at 3:30 P.M. on a Federal holiday. (Dkt. 197-2.) At that time, the parties already had a meet-and-confer scheduled for 11:00 A.M. on June 22 to address IP Bridge's request for an extension, and IP Bridge

---

[1] IP Bridge's claw back of documents cited in Seagate's opposition brief precipitated the letter briefing to the Court dated June 18, 2026, (Dkts. 185, 186), and the postponing of the June 23, 2026 hearing on IP Bridge's motion for leave to amend, (Dkt. 189), so the motion for leave would be heard contemporaneous with Seagate's forthcoming motion regarding the two clawed back documents. Since then, IP Bridge has clawed back over 130 additional documents. (Chung Decl. ¶ 15.) The deadline for Seagate to file its motion regarding the clawed back documents is now July 10, 2026 and the deadline for Seagate to file discovery motions regarding IP Bridge's privilege log is now August 7, 2026. (Dkt. 203.)

unilaterally indicated that Seagate should be prepared to discuss "the issues enumerated in the letter" during that call. (Ex. C (Email from S. Duncan Smith dated June 19, 2026).)

IP Bridge then used the June 22 meet-and-confer to discuss the issues identified in its deficiency letter. (Chung Decl. ¶¶ 12–13.) Counsel for Seagate endeavored to discuss the issues in good faith. (*Id.*) The parties also discussed IP Bridge's requested extension. Counsel for Seagate indicated that it would consider an extension if limited in scope but could not agree to an open-ended extension of IP Bridge's discovery motion deadline for all purposes, especially when the agreed-upon extension for Seagate was solely limited to issues concerning IP Bridge's privilege log. (*Id.* ¶ 14.) IP Bridge would not agree. (*Id.*)

Instead of requesting an informal conference with the Court as required under the Scheduling Order (Dkt. 91 at 10), or preparing its discovery motion, IP Bridge instead chose to file this motion for an extension on June 23, 2026—two days before the June 25 deadline, (Dkt. 195).

## III.    LEGAL STANDARDS

A scheduling order "may be modified only for good cause." Fed. R. Civ. P. 16(b)(4); Local Rule 16.3 (requiring a party to "establish good cause" for the proposed modification). The primary measure of good cause is "the movant's diligence in attempting to meet the [scheduling] order's requirements." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008) (citation modified). To be sure, this is an "exacting" standard that "demands a demonstration that the existing schedule cannot reasonably be met despite the diligence of the party seeking the extension." *Archer Daniels Midland Co. v. Aon Risk Servs., Inc.*, 187 F.R.D. 578, 581 (D. Minn. 1999) (internal quotation marks omitted). For this reason,

8

courts "do not take case management orders lightly, and will enforce them." *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001); *see also Archer Daniels*, 187 F.R.D. at 581 ("a magistrate judge's scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.").

The prejudice to the non-movant "may also be a relevant factor," but in general, courts "will not consider prejudice if the movant has not been diligent in meeting the scheduling order's deadlines." *Sherman*, 532 F.3d at 717.

## IV.    ARGUMENT

### A.    IP Bridge Lacks Good Cause for the Requested Extension

IP Bridge's motion should be denied for lack of "good cause." IP Bridge never engages with the relevant standard for showing diligence—i.e., that "the existing schedule ***cannot reasonably be met despite the diligence*** of the party seeking the extension." *Archer Daniels*, 187 F.R.D. at 581 (emphasis added). The motion thus fails for this reason alone.

In any event, IP Bridge was not diligent in seeking to meet the June 25 deadline. Indeed, IP Bridge has known of that deadline (i.e., falling two weeks after the close of written and document fact discovery) for over 18 months. Yet IP Bridge ***chose to wait until May 12, 2026*** to serve three new sets of discovery on Seagate—knowing it would not receive responses until June 11, and knowing that the deadline to file a discovery motion would quickly approach on June 25. But even still, IP Bridge had two full weeks where it could have diligently (i) identified responses that it believed were deficient, (ii) agreed to Seagate's offer to meet and confer on June 15 or 16, (iii) requested an informal conference with the Court thereafter, and (iv) prepared and filed its motion by June 25. IP Bridge's

9

motion fails to provide *any* explanation for why IP Bridge could not have done *any* of those things. Accordingly, IP Bridge was not diligent at any point, and the motion fails across all levels.

### 1. The Two "Good Cause" Arguments That IP Bridge Advances Are Legally Irrelevant

IP Bridge offers only two arguments to try to meet the "exacting" good cause standard: (i) IP Bridge "diligently worked to *narrow* its discovery disputes," and (ii) that an extension will "*narrow* the disputes presented to the Court." (Mot. at 4–5 (emphasis added).) But even if that were true, it makes no difference. IP Bridge does not identify any caselaw to support why its supposed efforts to "narrow" disputes could establish "good cause." Nor could it. The question is whether the movant was diligent "in attempting to *meet the [scheduling] order's requirements*" (i.e., the June 25 deadline)—not whether the movant was diligent in working to narrow the issues. *Sherman*, 532 F.3d at 716 (citation modified).

Aside from an unsupported assertion that it "could not have pursued these disputes faster," (Mot. at 5), IP Bridge never contends that it could not have met the scheduling order's requirements had it been diligent. Likewise, IP Bridge never explains how it was diligent in pursuing the discovery at issue or raising alleged disputes with Seagate. Instead, it just claims to be "hopeful" that more time might result in narrowing of the "disputes." (*Id.*) That does not meet the "good cause" standard. IP Bridge's failure to meaningfully engage with the diligence requirement is fatal, and the Court should deny the motion for this reason alone.

10

### 2.    IP Bridge Was Not Diligent in Pursuing the Discovery at Issue

Even to the extent that any of IP Bridge's diligence arguments are relevant to consider, IP Bridge's choice to wait until the very end of the discovery period to serve the discovery requests at issue demonstrates a lack of diligence. *See Daramola v. Dungarvin Minnesota, LLC*, No. 24-CV-00761 (KMM/ECW), 2026 WL 1102712, at *7 (D. Minn. Apr. 23, 2026) (finding a lack of diligence where plaintiff never explained why he "waited until the very end of the fact-discovery period to serve requests for written discovery"). Here, IP Bridge never explains why it waited until ***the last possible day*** to serve its recent discovery requests. Had IP Bridge been diligent and served them sooner, this entire situation could have been avoided.

The Scheduling Order expressly contemplates and accounts for any disputes arising near the close of fact discovery; that is why the deadline to file motions regarding written and document fact discovery falls two weeks ***after*** the close of discovery. (Dkt. 91 at 10.) IP Bridge has known about this two-week timeline for over 18 months—long before it served its most recent requests. In other words, IP Bridge had every opportunity to plan accordingly. In fact, the Court recently amended the Scheduling Order on May 28, 2026 at the joint request of the parties. (Dkt. 164.) Even though IP Bridge was aware of its May 12 discovery requests and the impending motion deadline at that time, IP Bridge never raised the prospect of an extension during the parties' negotiation of the amended schedule. (Chung Decl. ¶ 6.)

Thus, IP Bridge had a reasonable opportunity to develop its discovery issues within the existing deadlines—it simply failed to do so. *See Fair Isaac Corp. v. Fed. Ins. Co.*, No.

11

16-CV-1054 (WMW/DTS), 2022 WL 1537957, at *4 (D. Minn. May 16, 2022) ("When a litigant has a reasonable opportunity to develop an issue within the deadlines established by the pretrial scheduling order, the litigant's failure to do so demonstrates lack of diligence regardless of whether the failure resulted from a tactical decision or neglect."). Only now, after recognizing the situation it placed itself in, does IP Bridge want the Court to give it a pass under the guise of a desire to narrow the issues. That does not reflect diligence.

### 3.    IP Bridge Was Not Diligent in Raising Its Alleged Disputes

IP Bridge's failure to explain why it could not have sought the discovery at issue sooner is sufficient to show a lack of diligence. But even after receiving Seagate's responses on June 11, IP Bridge had *two full weeks* to raise any alleged issues with the Court. There is no excuse for why IP Bridge could not have raised its alleged disputes on that timeline when those two weeks are specifically built into the schedule to accommodate any late-arising discovery disputes.

Notably, IP Bridge never mentions Seagate's June 12 offer to meet and confer on June 15 or 16 to discuss Seagate's June 11 discovery responses, let alone the fact that IP Bridge ignored that offer entirely. (Ex. D (Email from K. Elfstrand dated June 24, 2026).) Instead, IP Bridge waited until June 19—a full week later and only 6 days before the motion deadline—to serve a 20-page letter identifying 42 issues at 3:30 P.M. on a Federal holiday. (Dkt. 197-2.) The parties then met and conferred on an expedited basis on June 22. But IP Bridge never requested an informal conference with the Court or tried to file a motion to compel by June 25.

12

A diligent party in this position would have (i) accepted Seagate's June 12 offer to meet and confer on June 15 or 16, (ii) promptly identified its issues before that conference, (iii) requested an informal conference with the Court, and (iv) prepared and filed a motion by June 25. IP Bridge could have taken that approach, but it ultimately chose a different path: IP Bridge *chose* to wait until the last day possible to serve its discovery requests knowing it would only have two weeks to file a motion on those requests, it *chose* not to meet and confer with Seagate on June 15 or 16, it *chose* to devote resources to a 20-page deficiency letter (instead of preparing a motion to meet the June 25 deadline), it *chose* not to request an informal conference with the Court, and it *chose* to devote resources to filing a motion for extension (again, instead of preparing a motion to meet the June 25 deadline). Those choices have consequences because they show that IP Bridge *could have* reasonably met the existing June 25 deadline—which it has known about for 18 months—had IP Bridge planned for it and acted diligently. *Archer Daniels*, 187 F.R.D. at 581 (explaining that good cause requires a showing "that the existing schedule cannot reasonably be met despite the diligence of the party seeking the extension"). Instead of diligently meeting with Seagate and dedicating resources to meeting the discovery motion deadline, IP Bridge instead chose to dedicate resources to other items like its letter and motion for extension.

IP Bridge also makes much of its prior agreement for an extension for Seagate to file a motion concerning IP Bridge's privilege log, and seeks to mask its own request as nothing more than a "reciprocal extension." That is not an accurate characterization. As explained above, (*supra*, II.B), IP Bridge delayed for months in producing a privilege log, and when it finally did, the reason for IP Bridge's initial proposal to forego a privilege log

13

altogether (and its ensuing delay) became clear: the log contained approximately 12,000 entries with widespread deficiencies. Seagate diligently pursued the deficiencies in IP Bridge's privilege log, which IP Bridge admitted was not subject to a relevance review, and IP Bridge wanted more time to attempt to cure the problems with its log before Seagate filed a motion. As such, the parties agreed to an extension that ***benefits IP Bridge*** by giving IP Bridge extra time to cure the widespread problems with its log. There is nothing "reciprocal" about IP Bridge's request for additional time to pursue new discovery motions against Seagate. The two issues are entirely distinct. Thus, IP Bridge's efforts to label its motion as merely a "reciprocal extension" is a baseless attempt to mask its lack of diligence in pursuing the discovery it seeks and raising the alleged disputes it now complains of.

### B.      IP Bridge's Requested Extension Would Prejudice Seagate

As an initial matter, the Court need not even address prejudice if it finds that IP Bridge is unable to demonstrate diligence. *Bombardier Recreational Prods. Inc. & BRP U.S. Inc. v. Arctic Cat Inc.*, No. CV 12-2706 ADM/LIB, 2015 WL 8082522, at *2–4 (D. Minn. Dec. 7, 2015). Here, IP Bridge cannot show that it was diligent for the reasons already explained above, and its motion should be denied for that reason alone.

In any event, should the Court consider prejudice, Seagate has been and will continue to be prejudiced by IP Bridge's requested extension. This case has reached a stage where discovery must finally come to an end. As the Court well knows, this is a case where there has been significant discovery, (Dkt. 155 at 3–5 (providing a brief summary of IP Bridge's discovery efforts and Seagate's productions)), the parties have spent over a dozen hours on at least nine discovery-related meet-and-confers, (Chung Decl. ¶ 16), there have

been numerous extensions, (*see* Dkts. 126, 191, 203), an informal discovery conference, and a motion to compel, (Dkt. 148), with still more disputes on the horizon related to IP Bridge's privilege log. The importance of adhering to a Scheduling Order reaches its zenith in cases like this where the discovery process spirals and results in significant cost and burden for both the parties and the Court. *See Damgaard v. Avera Health*, No. CIV. 13-2192 RHK/JSM, 2015 WL 1608209, at *7 (D. Minn. Apr. 10, 2015) ("Obedience to the constraints of the Court's Scheduling Orders is critical if the Court is to capably perform its case management responsibilities."); *Archer Daniels*, 187 F.R.D. at 582 (explaining that "[s]cheduling orders have become increasingly critical to the district court's case management responsibilities" (internal quotations omitted)). Nevertheless, IP Bridge now asks the Court to excuse its lack of diligence and extend its deadline for three additional weeks to allow it to raise more discovery motion practice. Under these circumstances, "[o]bedience to the constraints of the Court's Scheduling Orders is critical," *Damgaard*, 2015 WL 1608209, at *7, and this Court should "enforce" its Scheduling Order and deny the motion, *Bradford*, 249 F.3d at 809 (8th Cir. 2001).

In addition, allowing IP Bridge's requested extension would prejudice Seagate "procedurally by diverting [Seagate's] attention from work that is timely, and necessary, in accordance with the Pretrial Scheduling Order of the Court." *FLOE Int'l, Inc. v. Newmans' Mfg. Inc.*, No. CIV. 04-5120 (DWF/RLE), 2005 WL 6218040, at *4 (D. Minn. Nov. 9, 2005), *aff'd*, 2006 WL 6116643 (D. Minn. Feb. 3, 2006). Over the next few weeks, Seagate must prepare its own motion addressing the significant deficiencies in IP Bridge's privilege log, address IP Bridge's recent claw backs, begin preparing to take offensive

15

depositions of IP Bridge's witnesses, and begin preparing to defend depositions of Seagate's witnesses. Accordingly, granting the requested extension would improperly reward IP Bridge's pattern of delay and prejudice Seagate "by diverting [Seagate's] attention from work that is timely, and necessary, in accordance with the Pretrial Scheduling Order of the Court" to address untimely disputes that IP Bridge could (and should) have raised sooner but for its lack of diligence. *FLOE*, 2005 WL 6218040, at *4.

## V.      CONCLUSION

For the foregoing reasons, Seagate respectfully requests that the Court deny IP Bridge's motion.

Respectfully Submitted,

Dated: June 30, 2026

**FAEGRE DRINKER BIDDLE & REATH LLP**

*/s/ Doowon Chung*

David J.F. Gross (MN #0208772)
4800 N. Scottsdale Road, Suite 2200
Scottsdale, AZ 85251
Telephone: (480) 643-1850
*david.gross@faegredrinker.com*

Chad M. Drown (MN #0319053)
Kevin P. Wagner (MN #034008X)
Doowon Chung (MN #0397413)
Kelly J. Fermoyle (MN #0398356)
Kirsten L. Elfstrand (MN #0401213)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: (612) 766-7000
*chad.drown@faegredrinker.com*
*kevin.wagner@faegredrinker.com*
*doowon.chung@faegredrinker.com*
*kelly.fermoyle@faegredrinker.com*
*kirsten.elfstrand@faegredrinker.com*

Evan J. Kline-Wedeen (*pro hac vice*)
320 South Canal Street, Suite 3300
Chicago, IL 60606
Telephone: (312) 569-1000
*evan.kline-wedeen@faegredrinker.com*

**Attorneys for Defendants.**

17

## CERTIFICATE OF COMPLIANCE

The foregoing document complies with the type-volume limitation of Local Rule 7.1. The text of this brief, including footnotes, was prepared in Times New Roman, 13-point font. According to the word processing system used to prepare it, excluding the case caption, signature block, table of contents, and table of authorities, the word count of this brief is 4,609.

*/s/ Doowon Chung*
Doowon Chung

18

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 30, 2026, I caused a true and accurate copy of the foregoing document to be served on all counsel of record via the Court's CM/ECF system.

*/s/ Doowon Chung*
Doowon Chung